Chancellor Matthews
delivered the decree of the «ourt:
The argument in this case was taken up first on the master’s report, to which an exception was taken by defendant’s counsel, as to an allowance of interest on an account stated by Dupont, Brewton and Co. between them and complainant, from the date of the last article in that account; and it was contended that interest ought to he allowed from the time only, that the law of this state allows it, on open accounts, viz. from March, 1784. On that part of the report specially stated by the master, respecting a quantity of salt, it was insisted by complainant’s counsel, that it was sucli a credit as ought to be allowed him; and by the counsel for the defendant, that it ought not. The argument was next gone into on the pleadings at large, and three points were made, viz. 1st. That the bond given by Dupont to Nutt, one of the defendants in this cause, could be binding only on the private estate of Dupont; and that it having been given for a partnership debt, on an open account, the former *538 being a higher security than the latter, it is in extinguishment of the debt of the pai’tnership. 2d. That the assignment made by Dupont to Nutt of the partnership funds, during the life of Jones, another of the partners, without his privity or consent, was illegal and null and void, and 3d. That the accounts exhibited by Nutt against the partnership of Dupont, Brewton & Co. contains charges to a large amount for compound interest, and interest during the war, which ought not to be allowed. We will first observe Non the exception to the master’s report, and are of opinion that it is not a well founded one; because }las been the uniform practice of this court, to allow . * . interest on a stated account, from the day on which it is s*Sne(^j and this account comes fully within this rule, As to the credit given complainant for the salt, it being 110 more *^an a conditional one, that is when the money was received, for which it sold, it was incumbent on complainant to shew that it had been received; his failing to tl0 so, must deprive him of any benefit as to that sum. Before we proceed to observe on the second argument in ^1180’ ^ be proper to state the case at large. The copartnership of Dupont, Brewton & Co. was largely indebted to Nutt, one of the defendants, a merchant in England, previous to the war between the United States of America and Great Britain. Dupont during the war went from this country, bound on a voyage to France, was taken by a British ship of war, and carried to England. Whilst there he was prevailed on by Nutt to give him the bond in question; also a general assignment of the whole of the pai’tnership funds; and this without the privity or consent of Jones, the other surviving partner, who was at the time in Georgia. Nutt at tho close of the war, through his agent here and by virtue of the said bond, procured an act of the legislature to authorise him to receive from the treasury the securities for money which liad been taken for the sale of Dupont’s private estate, under the confiscation act of this state, in trust for himself and the other creditors of Dupont. He accordingly did so, and by virtue of the assignment has also possessed himself of the partnership books and other *539 papers; and he insists that he was well warranted in acting as he has done, and ought not now to be disturbed in the enjoyment of those advantages thus obtained. On the contrary it is contended by complainant, that the assignment was illegal, for two reasons, viz. circumstanced as Dupont was, he could not be considered as a free agent, because his refusal to execute what was required of him, would have subjected him to confinement in goal in a foreign country, he being completely in the power of a large and urgent creditor; and because the assignment was made without the privity or consent of his co-partner Jones. Having thus stated this part of the case, we will proceed with our observations on these three points that have been made. As to the first point, the bond in question being the individual bond of Dupont, never can attach itself in the first instance on the partnership concerns; but must be considered as binding on the private estate of Dupont alone. Indeed the defendant Nutt himself has so considered it; as by virtue of that bond he applied for and obtained an act of the legislature for possessing himself of that estate, in trust for himself and the other creditors of Dupont; and has accordingly possessed himself of all the securities for which the estate was sold. If the court do not so determine it, they must see it in the light of an imposition on the legislature, that by calling it the private debt of Dupont, thereby acquiring a right to receive from Dupont’s private estate, to the injury probably of his private creditors, which he could not legally or equitably be entitled to, until their demands were all previously satisfied. "Whether the bond under these circumstances is to be considered as an extinguishment of the partnership debt, we will consider in another branch of the cause. As to the second point, it is one of the first impression; no case analogous to it has yet come under the view of this court; the books from which we usually draw our information furnish no precedent; because, as it has been very proper-» ly observed by defendant’s counsel, all the decisions contained in them respecting the rights and conduct of merchants, are bottomed on a distinct peculiar code of laws, *540 which have been established for regulating mercantile proceedings, and have no manner »f relation to the conduct of merchants in this country. Thus circumstanced, we must consider this part of the case as standing alone, and decide it on its own intrinsic merits, according to the best of our judgment. To sanction the conduct of Du-pont in this instance, we think would he attended with very mischievous consequences indeed. It would be cutting by the roots every degree of confidence between man and man in the mercantile line; no one would consider himself safe for a day, if his partner has the power by the stroke .of a pen, without his knowledge or consent to reduce him to a state of ruin. For let us view for a moment how far this mischief is capable of being carried: Suppose A. B. and C. are partners in flourishing trade, in good credit, and in the ordinary course of mercantile dealings, not only competent to the discharge of their debts, but have made profit on their trade — A. by collusion with one or more of the creditors might assigu over mot ony the whole hooks and securities for money, hut stock in trade also of the co-partnership; the creditor might make a forced sale of the latter, which by bringing into market a larger quantity of goods than there is any immediate demand for, they must be bought in by speculators at a very inferior price, and thus what in a regular course of trade would have been more than adequate to the discharge of the whole pai’tnership debts, is swallowed up by one or two creditors, to the ruin of responsible, innocent persons, and perhaps many of the other creditors. The mischief would not end here. So extraordinary a conduct in one partner, might induce a general belief that the others could not have been altogether innocent; the probable consequence would be, that neither of those persons ever could engage in trade again with any prospect of advantage. On the contrary, how often has it happened that when men have merely been unfortunate in trade, and have failed, with the characters of honest men, that even their creditors have joined in re-establishing them in business. Further, would not this he opening a dear for the grossest frauds to be prac- *541 deed ? Might not one or two creditors by bribery, induce a man otherwise disposed to be honest, to an act of this kind ? Again, suppose another partner to make a similar assignment to another creditor, what a scene of contusion and litigation must neccssai’ily spring out of such a clashing of claims; for who is to determine which of the assignments is to be preferred ? It is unnecessary to trace the evil tendency of such power in one partner over the funds of the partnership, to any greater extent; those already pointed out are of such magnitude as to induce every reflecting and honest mind to revolt at the idea of placing within the reach of any one man, so arbitrary, so Immoral, and so dangerous a power over the property, the integrity and future welfare of others. But when we view this matter in its public relation, we And ourselves loudly called on to check the evil in its birth,* for as a mercantile country, its prosperity wall greatly depend on the integrity of its mercantile transactions. To give the smallest countenance then to such an act as that now the subject of our consideration, would be giving a deep wound indeed to the commerce of this country. We arc therefore of opinion that the assignment made by Dupont to Nutt, without the privity or consent of the other partner, Jones, independent of the unfavorable situation lie was then in, was unwarranted by any law, or usage of merchants, is inequitable and nefarious, and must be set aside. We however think that Nutt ought not to he excluded from coming in as a general creditor on the partnership funds, for so much of his debt as remains unsatisfied by the private estate of Dupont, pari passu, with the other partnership creditors. As to the third point. We must here conform our decision to that of the case of Greenwood vs. Air: it ought therefore to he referred to the master to report the balance due to Nutt by Dupont, Bmvton & Co.
It is thorefoi'e decreed, that the report of the master be conñrmed, except as to the article respecting the salt, which not being supported by proper evidence must be disallowed. That the assignment made by Dupont to Nutt he set aside» That Nutt be however allowed to *542 come in as a general «’editor on the partnership funds of Dupont, Brewton & Co. pari passu with the other creditors, for so much of his debt as remains unsatisfied out of Dupont’s private estate. That the account of Nutt be referred to the master, to state wliat is due thereon, allowing him the usual iuterest from the close of his account, until the commencement of the war in April, 1775, and simple interest from the date of the treaty of peace, in 1783: That the balance of 2244Z. 17s. reported to be due to complainant, be admitted in the like order of payment out of the aforesaid funds, with interest on such balance till paid} and that each party pay his own costs..